No. 13497

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

HARVEY SCHUMACHER,

      Claimant and Appellant,

-vs-

EMPIRE STEEL MANUFACTURING COMPANY,

      Employer,
   and
EMPLOYERS MUTUAL LIABILITY INSURANCE
COMPANY OF WISCONSIN,

      Defendant and Respondent.

---

Appeal from:  Workers' Compensation Court
             Honorable William E. Hunt, Judge presiding

Counsel of Record:

    For Appellant:

        Kelly and Foley, Billings, Montana
        William T. Kelly argued, Billings, Montana

    For Respondent:

        Crowley, Haughey, Hanson, Gallagher and Toole,
         Billings, Montana
        Bruce Toole argued, Billings, Montana

---

Submitted: September 13, 1977

Decided: OCT 18 1977

Filed: OCT 18 1977

_Thomas J. Kearney_
             Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Appellant appeals a ruling of the workers' compensation court terminating his disability benefits under the Workers' Compensation Act.

On July 26, 1972, appellant Harvey Schumacher, while working for respondent Empire Steel Manufacturing Co., injured himself when he attempted to lift a heavy steel sheet above his head. As a result of injuries to the left side of his neck, left shoulder and arm, the workers' compensation court, at a September, 1973 hearing, found that the proper amount of compensation was $78 per week for appellant's temporary total disability and $55 per week for his permanent partial disability. In October, 1974, respondent insurance carrier petitioned the workers' compensation court for a further determination of appellant's injuries. After a hearing on May 4, 1976, the workers' compensation court judge found appellant was no longer disabled and ordered that his compensation be terminated as of June 4, 1976. The judge, in his findings of fact and conclusions of law, did not address the issue of whether appellant should be reimbursed by respondents for psychiatric treatment which appellant had obtained without the approval of the workers' compensation board or respondents.

The judge based his decision to terminate appellant's disability benefits on the fact there was little evidence appellant suffered from any continuing physical injury. The workers' compensation judge considered the testimony of a neurologist and a clinical psychologist, each of whom had examined and treated appellant. The physicians testified that much of appellant's suffering was due to his psychosomatic personality and that this psychological problem was worsening. Both doctors testified appellant was suffering from hypochondriacal neurosis, and that, at least in appellant's mind, the pain he was experiencing from

- 2 -

his work-related injury was very real and continuing. The psychologist stated that appellant needed psychotherapy and that schooling would be in appellant's best interests, both to retrain him and to assist in the control of his hypochondriacal neurosis. The two doctors testified that the quickest route to psychological rehabilitation would be a final settlement so that appellant could put the entire matter behind him.

The following issues are presented on appeal:

1. Did the evidence support the workers' compensation court's decision to terminate appellant's benefits?

2. Must respondents pay the bill of a psychiatrist who treated appellant where such treatment was not approved by the insurance carrier, employer, or the workers' compensation board?

3. Are respondents required to pay appellant's attorney fees?

Appellant's claim is compensable and the workers' compensation court's decision to terminate benefits is reversed. Whether appellant still suffers physical injury is debatable. It is undisputed, however, that appellant has continuing psychological problems from his injury. Montana law has long held that neurosis resulting from a work related injury is compensable under the Act. Legowik v. Montgomery Ward, 157 Mont. 436, 486 P.2d 867 (1971); O'Neil v. Industrial Accident Board, 107 Mont. 176, 81 P.2d 688 (1938). There was testimony that appellant had psychological problems prior to his injury, but it is well established that an employer takes his employee subject to the employee's physical and, logically, emotional condition at the time of his employment. Birnie v. U. S. Gypsum Co., 134 Mont. 39, 328 P.2d 133 (1958); Peitz v. Industrial Accident Board, 127 Mont. 316, 264 P.2d 709 (1953). An employee who suffers from a pre-existing condition is entitled to compensation if the condition was aggravated by an

industrial injury. Rumsey v. Cardinal Petroleum, 166 Mont. 17, 530 P.2d 433 (1975); Weakley v. Cook, 126 Mont. 332, 249 P.2d 926 (1952).

Respondents' argument that the court furthered appellant's best interests by terminating his benefits, thereby putting the matter behind him, is an imaginative one. Imaginative, but not too convincing. A final lump sum settlement in lieu of weekly payments, as authorized by section 92-715, R.C.M. 1947, would serve the same purpose of "putting the matter behind" appellant, while allowing him to obtain necessary educational retraining and medical care, and is hereby ordered in this case. See Legowik v. Montgomery Ward, supra.

Respondents' argument in their brief that section 92-706, R.C.M. 1947, requires board approval of a claimant's medical care is equally meritless. The section reads:

> " * * * the employer or insurer * * * shall
> furnish reasonable services by a physician
> or surgeon, reasonable hospital services and
> medicines when needed, and such other treat-
> ment approved by the board * * *."

The statute, by its express language, requires an insurer or employer to pay for reasonable physician services and reasonable and necessary hospital and medical services, without any mention of board approval. It is only "other treatment", not specifically mentioned, which must have prior board approval.

The issue here, is not, as respondents contend, whether there was board approval of the psychiatric care. The issue is whether such physician services were "reasonable" given the nature of appellant's sickness and the treatment he had already received. This was an issue the workers' compensation court apparently did not consider.

It is undisputed that appellant suffered from psychological disorders. There is nothing in the record to show that

- 4 -

treatment of appellant's psychiatric problems by a psychiatrist was anything but "reasonable services by a physician" within the meaning of section 92-706. Respondent insurance carrier therefore is required under the statute to pay for the cost of the psychiatric treatment.

The final issue on appeal is whether appellant is, by statute, entitled to attorney fees if his claim, after being denied, is later found to be compensable on appeal. Section 92-616, R.C.M. 1947, allows a claimant to recover reasonable costs and attorney fees after a successful appeal. McMillen v. Arthur G. McKee & Co., ____Mont.____, 533 P.2d 1095 (1975). This section is triggered only when " * * * the insurer denies the claim for compensation." In this case, the workers' compensation court judge, and not the insurer, denied appellant's claim. The insurer paid every benefit it was required to pay to appellant under the Act up to and until the workers' compensation court judge, after the hearing, issued his finding that appellant was no longer disabled and no longer entitled to workers' compensation benefits.

Section 92-616 is meant to penalize an insurance carrier which cavalierly terminates a claimant's benefits, without the prior approval of the workers' compensation court. In this case, however, respondent insurance carrier was entitled to rely on the opinion of the workers' compensation court judge and need not bear the cost of appellant's appeal.

This case is affirmed in part and reversed in part, and remanded to the workers' compensation court for a determination of the amount of the lump sum payment which is properly payable to appellant.

_____
                Chief Justice

- 5 -

We concur:

_Frank I. Haswell_

_Joe Conway Harrison_

_Gene B Daly_

_Daniel J. Shea_
Justices